UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-21772-CIV-MORENO/TORRES

RAUL G. COWLEY, individually and on behalf
of all others similarly situated,

    Plaintiff,

vs.

BURGER KING CORPORATION, a Florida
corporation,

    Defendant.
_____/

ORDER DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment [D.E. 32]. Defendant responded [D.E. 35] and Plaintiff replied [D.E. 42]. Having considered the motions and the parties' supplemental material, the Court finds that there are genuine issues of material fact that preclude summary judgment. Accordingly, for the reasons set forth below, Plaintiff's Motion is denied.[1]

---

[1] Pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the United States District Court for the Southern District of Florida, this case was referred by Judge Moreno to the undersigned Magistrate Judge to take all necessary and proper action as required by law with respect to all pretrial matters. [D.E. 53]. This Order is, however, subject to *de novo* review and will be treated as a Report and Recommendation in the event either party timely files objections with the District Judge. *See supra* at 12.

## I.   BACKGROUND

On February 10, 2007, Raul G. Cowley ("Plaintiff") used his debit card at the Burger King restaurant at 910 Arthur Godfrey Road ("Restaurant"), and the electronically printed receipt included the expiration date of his debit card.

Prior to April, 2006, credit/debit card receipts at Restaurant did not contain the expiration date of the card.[2] In April, 2006, Defendant contracted a third-party vendor, NCR Corporation ("NCR"), to install integration software in the point-of-sale credit card terminals ("POS Terminals") at all company restaurants. The purpose of this "Integration Project" was to migrate from freestanding card readers to the built-in card readers in the POS terminals. Integrated POS Terminals apparently facilitate the processing, record-keeping, and accounting of credit/debit card transactions. Defendant commenced the "Integration Project" on approximately April 20, 2006. Restaurant received the integration software on approximately December 7, 2006.

Unbeknownst to Defendant, the integration software had a pre-programmed default setting that made POS Terminals print the credit/debit card expiration date on the customer's receipt. On or about January 20, 2007, NCR notified Defendant that the default setting of the integration software might result in the issuance of customer receipts that contained a card's expiration date. On approximately January 22, 2007, Defendant confirmed that the integrated POS Terminals were, in fact, printing customer receipts with the expiration date. After consulting with NCR, Defendant's programmers created a "Patch" to update the POS Terminals so that they would mask the expiration date on customer receipts. The process of

---

[2] In support of their opposition to Plaintiff's Motion, Defendant attached the declaration of Ahnaf Ali, the manager for Restaurant Systems, a division of Defendant's information technology department [D.E. 37]. Because we must view all facts in a light most favorable to the non-moving party, this factual background is primarily garnered from Mr. Ali's declaration.

programming, testing, and installing the Patch took several weeks because each of more than 750 company restaurants had to have an individual Patch installed, each with its own unique identifying information. As of February 27, 2007, the "patching" was complete, and Defendant presumed that all POS Terminals were properly masking expiration date.

In August, 2007, Defendant learned that 76 out of 2879 POS Terminals never actually received the Patch because these machines were apparently offline during the installation process. According to Defendant, the terminals could have been offline during installation for any number of reasons, such as a power failure, an unplugged POS Terminal, or a POS Terminal being in the process of rebooting when the Patch was installed. At any rate, these terminals were still printing the expiration date on credit card receipts. Over the next several weeks, Defendant identified the non-compliant POS Terminals and installed the Patch. As of August 24, 2007, all POS Terminals were properly masking the expiration date.

Plaintiff filed a Complaint against Burger King Corporation ("Defendant") under the Fair and Accurate Credit Transaction Act ("FACTA") [D.E. 1]. FACTA is a subset of the statutes contained within the Fair Credit Reporting Act ("FCRA"), codified at 15 U.S.C. §§ 1681, *et. seq.* Section 1681c(g)(1) provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction." 15 U.S.C. § 1681(c)(g)(1). Negligent violations of FCRA provisions subject a defendant to liability for actual damages suffered by the consumer as a result of the alleged violation. 15 U.S.C. § 1681o. Plaintiff does not claim to have suffered any actual damages, therefore a finding that Defendant negligently violated section 1681c(g)(1) would yield no recovery.

Willful violations of the FCRA, though, expose a defendant to actual, statutory, and punitive damages. 15 U.S.C. § 1681n(a). Plaintiff intends to show that Defendant willfully violated section 1681c(g)(1), entitling him (and others similarly situated) to statutory and/or punitive damages under Section 1681n. Here, Plaintiff seeks partial summary judgment "that Burger King willfully violated FACTA when it provided Plaintiff with a receipt on February 10, 2007, which included the Plaintiff's credit card expiration date." [D.E. 32 at 7].

## II.   ANALYSIS

### A.   *Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Imaging Bus. Mach., LLC. v. BancTec, Inc.*, 459 F.3d 1186, 1189 (11th Cir. 2006) (citing Fed. R. Civ. P. 56(c)). In deciding a summary judgment motion, the court must view all the evidence and make all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citing *Cruz v. Public Super Mkts., Inc.*, 428 F.3d 1379, 1382 (11th Cir. 2005)). A material fact is one that might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hilburn v. Murata Elecs. North Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). Thus, the task is to determine whether, considering the evidence in the light most favorable to the plaintiff, there is evidence on which the trier of fact could reasonably find a verdict in their favor. *See Anderson,* 477 U.S. at 251; *Hilburn*, 181 F.3d at 1225.

### B.    *Willful Noncompliance Under the FCRA*

The Eleventh Circuit has not specifically addressed the definition of "willful" under the FCRA, but several circuits agree hold that willful noncompliance under section 1681n(a) requires "knowing and intentional" commission of an act that the defendant knows to violate the law. *See Phillips v. Grendahl*, 312 F.3d 357, 370 (8th Cir. 2002); *Dalton v. Capiral Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001); *Cousin v. Trans Union Corp.*, 246 F.3d 359, 372 (5th Cir. 2001); *Duncan v. Handmaker*, 149 F.3d 424, 429 (6th Cir. 1998); *Cushman v. Trans Union Corp*, 115 F.3d 220, 226 (3d Cir. 1997) ("To show willful noncompliance with the FCRA, [Plaintiff] must show that [Defendant] 'knowingly and intentionally committed an at in conscious disregard for the rights of others,' but need not show 'malice or evil motive.'") (citations omitted); *Reynolds v. Hartford Financial Services Group, Inc.*, 435 F.3d 1081 (9th Cir. 2006) (adopting the Third Circuit's decision in *Cushman* that "willfully" entails a "conscious disregard" of the law), *rev'd on other grounds, Safeco Ins. Co. of America v. Burr*, 127 S. Ct. 2201, 2216 (2007).

The United States Supreme Court recently interpreted the term "willful" as used in section 1681n, expressly holding that section 1681n(a) encompasses not only knowing and intentional violations of the FCRA, but reckless ones as well. *Rambarran v. Bank of America Corp.*, No. 07-21798-CIV-HUCK, 2007 WL 2774256, at *5 (S.D. Fla. 2007) (quoting *Safeco Ins. Co. of America v. Burr*, 127 S. Ct. 2201, 2216 (2007) ("reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)")). A defendant does not act in reckless disregard "unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco,* 127 S.Ct. at 2215 (citations omitted).

Although there is now no serious question that the act must be intentional, there is some disagreement as to whether it need be the product of "malice or evil motive." *See, e.g., Dalton*, 257 F.3d at 418 (holding that a plaintiff need not show malice or evil motive); *Cousin*, 246 F.3d at 372 (same); *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998) (same); *Cushman*, 115 F.3d at 226 (same); *but see Duncan*, 149 F.3d at 429 (a party must act "with a motivation to injure") (quoting *Kennedy v. Border City Sav. & Loan Ass'n,* 747 F.2d 367, 370 (6th Cir. 1984)). A recent decision in the Middle District of Florida followed the majority approach that a showing malice or evil motive is not required. *Soroka v. Homeowners Loan Corp.*, No. 05-CV-2029, 2006 WL 4031347, at *1 (M.D. Fla. 2006) ("[T]he plaintiff must show that the defendant 'knowingly and intentionally committed an act in conscious disregard for the rights of other,' but need not show 'malice or evil motive.'") (quoting *Bakker*, 152 F.3d at 1013).

We follow that majority rule here as well. The definition of a willful act as simply a knowing and intentional act, without malevolent purpose, is fully consistent with how the Eleventh Circuit has defined the same statutory term in other similar non-criminal contexts. *See, e.g., Carter v. DecisionOne Corp.,* 122 F.3d 997, 1006 (11th Cir. 1997) (willfulness under the ADEA requires a knowing intentional act but not with evil motive, bad purpose, or purposeful intent to violate the statute); *Fluor Daniel v. Occupational Safety & Health Review Comm'n,* 295 F.3d 1232, 1239-41 (11th Cir. 2002) (willfulness under OSHA is an intentional disregard or plain indifference to OSHA requirements that does not require proof of evil motive or bad faith).

### C. *Genuine Issues of Material Fact Preclude Summary Judgment*

Plaintiff moves for the Court to find that, as a matter of law, Defendant willfully (i.e. knowingly and intentionally, or recklessly) violated Section 1681c(g)(1) of the FCRA, the

provision that prohibits a business from printing the credit/debit card's expiration date on a customer's receipt. Plaintiff's willfulness argument boils down to two undisputed facts:

> Here, the only material facts are: (i) that on February 10, 2007, Burger King provided a receipt to Plaintiff, a customer, at its corporate owned store at 910 Arthur Godfrey Road, Miami, Florida, 33141, which included the Plaintiff's credit card expiration date ... and (ii) that Burger King had actual knowledge of FACTA's truncation requirements by January 2007.

[D.E. 32 at 3]. *See February 10, 2007 Receipt* [D.E. 1 at 13]; *Defendant's Response to Interrogatory No. 14* [D.E. 32-3]. Defendant's verified interrogatory answer concedes that it knew of FACTA's truncation requirements as of January, 2007, one month prior to the February 10, 2007 receipt issued to the Plaintiff. And from that Plaintiff concludes that Defendant knowingly violated FACTA:

> By Burger King's own admission, it *actually knew* of FACTA's truncation requirements by January 2007 at the latest ... It *actually knew* that, as of January 20, 2007, it was systematically providing receipts containing prohibited information and had been since the November 2006 rollout of its new software and hardware. It *actually knew* that it was providing receipts containing prohibited information until at least February 27, 2007.

[D.E. 42 at 3] (emphasis in original).

The record on summary judgment shows that the February 10, 2007 receipt was issued between January 20, 2007 and February 27, 2007, a window of time where Defendant knowingly issued receipts with the credit card's expiration date. *See* Declaration of Ahnaf Ali [D.E. 37].[3] Defendant does not dispute these facts, but insists that it nevertheless did not knowingly violate FACTA. There is record evidence that, before the installation of the integration software, its POS terminals were FACTA compliant. Defendant claims that it did not know the integration software contained a default setting causing the terminals to print

---

[3] Mr. Ali's declaration was first entered into the record in support of Defendant's Response. Accordingly, Plaintiff did not formulate this argument until his Reply. For some reason, Plaintiff filed a motion to strike the declaration of Mr. Ali [D.E. 63,] despite the fact that his motion relies in large part on the information contained in that affidavit.

a card's expiration date. As soon as Defendant was alerted to the problem, it took immediate steps to remedy the situation. [D.E. 35 at 15].

Summary judgment is inappropriate for several reasons. First, willfulness under the FCRA is understood to be a question of fact for the jury. *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) (denying a merchant's motion for summary judgment, finding that material issues of fact existed as to whether the merchant willfully violated FACTA); *Soualian*, 2008 WL 410618 at *4 (triable issue of fact as to the issue of willfulness); *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("The reasonableness of the procedures and whether the [insurance agency followed them will be jury questions in the overwhelming majority of cases," citing *Cahlin v. General Motors Acceptance Corp.* 936 F.2d 1151, 1156 (11th Cir. 1991)); *Lenox v. Equifax Information Services LLC*, No. 05-01501-AA, 2007 WL 1406914, at *6 (D. Or. May 7, 2007) ("the determination as to whether defendant's action or inaction rises to the level of willfulness so as to violate the statutory obligations of the FCRA is also a question of fact"); *Cairns v. GMAC Mortgage Corp.*, No. CV 04-01840 PHX(SMM), 2007 WL 735564, at *8 (D. Ariz. Mar. 5, 2007) ("in this case, like in the overwhelming number of cases in which state of mind is dispositive, the issue of punitive damages is best left for the trier of fact to determine"); *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 821 (W.D. Ky. 2003) ("Questions involving a party's state of mind are generally appropriately resolved by a jury rather than on summary judgment.").

The motion did not cite, nor did the Court find, any FACTA published case where a court has found there to be willfulness, on summary judgment or through other means, as a matter of law. The absence of such authority compellingly shows that whether or not Defendant knowingly and intentionally violated the statute is for the jury to decide, even in

a case where, as here, there may be strong evidence from which the jury could reach that conclusion.

Second, we cannot ascertain on this record whether Plaintiff actually *knew* that the POS Terminal at Restaurant was printing receipts with the expiration date on February 10, 2007. From January 20, 2007 to February 27, 2007, Defendant programmed, tested, and installed the Patch in POS Terminals at over 750 restaurants. We do not know, however, the exact date that Defendant installed (or at least tried to install) the Patch at Restaurant. This date – unknown in this record – is crucial to a finding of willfulness.

For example, if Defendant tried to install the Patch at Restaurant on February 9, 2007, then Defendant would assume that all receipts printed after that date, including the February 10, 2007 receipt, were FACTA compliant. Although it was later determined that the POS Terminals at Restaurant were offline when Restaurant tried to upload the Patch, this would not change the fact that Defendant would have *thought* that its POS Terminals at Restaurant were FACTA compliant. On the other hand, if we assume that Defendants did not install the Patch at Restaurant until February 11, 2007, the knowing component is quite evident: Defendant knew as of January 20, 2007 that Restaurant was printing noncompliant receipts, and did not attempt to fix the problem until the day after Plaintiff received his noncompliant receipt. Plaintiff does not conclusively establish that Defendant knowingly issued receipts that contained the credit card's expiration date. And because Plaintiff does not do so, summary judgment is inappropriate.

Third, there is also a triable issue of fact as to whether Defendant *intentionally* committed that act. Assuming that Defendant knew the Restaurant was, at least for a limited time period, printing the expiration date on customer credit card receipts, a reasonable jury could nevertheless conclude that Defendant did not *intend* to violate FACTA. Defendant was

FACTA compliant prior to the installation of its integration software. As soon as it learned that the default setting of the software was to print the expiration date on credit card receipts, it uploaded the Patch at all its company restaurants. Viewing the evidence in a light most favorable to the non-moving party, Defendant never intended for the POS Terminal at Restaurant to print the expiration date on Plaintiff's February 10, 2007 credit card receipt. *See Cruz*, 428 F.3d at 1382.

Plaintiff also maintains that the uncontroverted evidence shows that Defendant, at least, recklessly violated FACTA:

> Burger King admits that it "fixed" the FACTA problem by February 27, 2007. But it also admits that it did not conduct a proper investigation because, in August 2007, Burger King learned, allegedly for the first time, that nearly 3% of its machines were not properly upgraded. Had Burger King simply conducted a sample transaction at each of its terminals - and Burger King presents no evidence that it did - it would have learned on or about February 27, 2007 that it was still violating FACTA.

[D.E. 42 at 8] (citations omitted). He argues in a very conclusory fashion that "no reasonable trier of fact would conclude that Burger King's misconduct was not, at a minimum, reckless." [D.E. 42 at 7]. We again disagree.

A reasonable jury could certainly find that Defendant's actions were merely negligent, as opposed to reckless. We recognize that such a finding would undermine Plaintiff's case because he is not alleging any actual damages. *See* § 1681o (only actual damages recoverable for negligent violations of the FCRA). Nevertheless, it is up to the jury to pinpoint the negligence/recklessness line and determine whether Defendant's conduct is tantamount to a willful and reckless violation of the FCRA guidelines.

According to Plaintiff, he used his debit card on two occasions at the Burger King restaurant, and both times the electronically printed receipt included the expiration date of his debit card. The first time he used the card was February 10, 2007, in the midst of the first

wave of Patch installations. He next used the card on July 21, 2007, just before the second set of Patch installations.

Theoretically, a jury could find that it was reckless of Defendant to install integration software in the POS Terminal at Restaurant that caused it to print the expiration date on Plaintiff's February 10, 2007 receipt . Plaintiff did not raise this argument, but even if he had, whether this conduct is tantamount to recklessness is best left to a jury to decide.

Instead, Plaintiff argues that Defendant was reckless for failing to discover that certain POS Terminals were "offline" during the initial Patch installation, thus resulting in the issuance of a noncompliant receipt on July 21, 2007. This argument, however, speaks to Defendant's conduct *after* the February 10, 2007 receipt was already printed. It bears repeating that Plaintiff seeks a partial finding that Defendant willfully violated FACTA on February 10, 2007. Logically, Defendant's conduct *after* printing that receipt is irrelevant to this motion.

The parties also argue over whether the Plaintiff must establish that Burger King violated the statute despite an objectively knowable risk of harm to the Plaintiff. We agree with Plaintiff that there is no "risk of harm" element when gauging a defendant's recklessness. *See Soualian v. Int'l Coffee & Tea, LLC*, No. CV 07-0502-RGK, 2008 WL 410618, at *3-4 (C.D. Cal. Feb. 9, 2008) ("[S]uch a characterization of recklessness would require a plaintiff to make a showing that there was an objectively knowable risk of harm by engaging in the act prohibited by statute. This characterization is incorrect. The *Safeco* court used the term 'risk of harm' only in the context of explaining why 'recklessness' under FACTA refers to whether there was a 'reckless disregard of *statutory duty*.") (emphasis in original). Nevertheless, under the standard of willfulness that does govern FACTA, there are too many issues of fact that preclude entry of judgment as a matter of law.

### *III. CONCLUSION*

Based upon a thorough review of the record as a whole Defendant's Motion for Partial Summary Judgment [D.E. 32] is **DENIED**.

For administrative purposes, the undersigned has disposed of the pending motion by Order as no dispositive relief is being recommended. However, pursuant to 28 U.S.C. § 636 and S.D. Fla. Local Mag. R. 4(b), the parties have ten days from the date of this non-dispositive Order to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. The entry of this Order shall *not* preclude either party from obtaining *de novo* review of the Order, as in that event the Order will be treated as only a Report and Recommendation. Furthermore, there are no factual findings being made in this Order, and therefore the failure to file objections shall *not* bar the parties from seeking a *de novo* determination at a later stage of the case by the District Judge of any issue covered in this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23rd day of May, 2009.

                                                          _____
                                                          EDWIN G. TORRES
                                                          United States Magistrate Judge

cc:    Hon. Federico A. Moreno
         Counsel of Record